### M. P. Brothers Company v. Kirkpatrick, et al.

(Decided April 23, 1926.)

### Appeal from Logan Circuit Court.

1.   Reformation of Instruments.—Proof showing mistake or fraud must be clear and convincing to warrant reformation of written contract.

2.   Reformation of Instruments—Rule Requiring Convincing Proof to Reform Written Contract Does Not Limit Proof to Express Statements of Witnesses, but may also be Developed by Character of Testimony and Circumstances and Facts Proven.—Rule requiring clear and convincing proof to reform written contract does not necessarily require that there should be no contrariety in proof, and proof is not confined alone to express statements of witnesses, but may also be developed by character of testimony, coherency of entire case, documents, circumstances, and facts proven.

3.   Reformation of Instruments—Evidence as to Mistake held to Lack Clear and Satisfactory Proof Necessary to Reform Written Contract for Sale of Grocery Business and Payment of Taxes.—In action to reform written contract, for sale of wholesale grocery business, and payment of taxes on the property, evidence held to lack clear and satisfactory proof necessary to show mistake.

4. Reformation of Instruments—As Respects Right to Reformation, Courts should Hesitate to Disregard Written Contract, Unless Thoroughly Convinced that Mistake was Made.—As respects right to reformation, courts should be slow to disregard written contract, unless thoroughly convinced mistake has been made, embodying therein that to which parties have not agreed.

5. Tender.—Averment in answer of tender into court of sum mentioned, unsupported by proof, does not establish that fact.

6. Costs—Alleged Tender in Answer Filed in Clerk's Office, Not Being Offer of Compromise or Offer to Confess Judgment, Held Not to Comply with Law, so as to Relieve Payment of Costs, Where Record Does Not Show Payment or Tender into Court (Civil Code of Practice, Sections 634, 635, 640).—Alleged tender of amount due, in answer filed in clerk's office and not in open court, not being offer of compromise, under Civil Code Practice, sections 634, 635, nor offer to confess judgment, under section 640, did not comply with such sections, so as to relieve payment of costs, where record does not show payment or tender into court.

SELDEN Y. TRIMBLE and COLEMAN TAYLOR for appellant.

W. V. PERRY and S. W. FORGY for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On February 1, 1923, the appellant, M. P. Brothers Company, then styled the W. A. Chambers Company, through its president, M. P. Brothers, and secretary, C. W. Read, sold a wholesale grocery business it was conducting in Russellville, Kentucky, to the appellees, A. D. Kirkpatrick, H. L. Kirkpatrick and J. H. Scarborough. The negotiations leading up to the formal contract of sale began early in the morning of February first and were not concluded until almost midnight, when Read drew up the contract which all the parties signed.

In outline, this contract provided in what manner the merchandise was to be valued, at what price the fixtures, automobile truck and a vacant lot were to be sold and when the purchase price was to be paid. Among the provisions of the contract, appeared this clause:

"It is also agreed that party of the second part (the buyers) assumes the payment of all taxes and licenses and all insurance on the above property beginning today. It is also agreed that part— of the second part will pay the 1923 taxes on the vacant lot."

The contract stated that it had "been read and agreed on" by all parties concerned. After it was signed, an additional clause was added transferring the lease of the premises in which the business was being conducted.

In the fall of 1923, a controversy arose between the parties to the above contract as to their respective liabilitise for the 1923 *ad valorem* taxes on the property, transferred by it. Appellees, admitting that they were liable for such taxes on the vacant lot, insisted that appellant was liable for the remainder of them. On the other hand, appellant, while conceding it was liable for one-twelfth of the taxes other than those on the vacant lot, denied it was liable for any more on the ground that by the quoted provisions of the contract, appellees assumed all taxes beginning February 1, 1923. Thereupon appellees brought this suit alleging that the real agreement and contract between the parties was that the appellant was to pay these 1923 taxes and that through mutual mistake and oversight, or mistake on their part and fraud on appellant's part, the contract as drawn did not conform to this true understanding and agreement. As appellees had been compelled to pay these taxes to prevent the property being seized and sold by the tax collectors, they prayed that the contract be reformed to express the true understanding and for judgment for the amount they had paid. Appellant traversed the claim of appellees and on the issues as thus raised, the parties went to trial. The lower court granted the appellees the relief they sought and from such judgment, appellant appeals.

It is admitted by all the parties that as to the licenses and insurance, such taxes and premiums were pro rated as of February 1, 1923. The appellees paid appellant the *pro rata* part of the license taxes and insurance premiums representing that part unexpired on February 1, 1923. Such, the parties agree, was their understanding and contract as to these matters. It is further agreed that as to the vacant lot, appellees were to pay all the 1923 taxes as the contract provides. Brothers and Read swear that as to the other taxes, the matter was thoroughly gone into and threshed out. The parties understood that the assessment had been made as of July 1, 1922, for taxes for the year 1923, and that as only one month of that year had elapsed at the time of the sale, they were not willing to pay more than one-twelfth

of that year's taxes and to this appellees agreed. Hence the provisions as to these taxes were coupled with the provisions about the licenses and insurance, the pro rating of which it is admitted by all was the agreement of the parties. On the other hand, appellees, all three, swear just as positively that the true understanding was that as the 1923 taxes had been assessed as of July 1, 1922, such taxes were properly payable by the sellers and that after a thorough discussion of the subject, the sellers agreed to pay them. All the parties to the conference were men of affairs, accustomed to making contracts. Appellees say that the contract was hurriedly read to them and in the hurry they understood the quoted clause to mean that they would pay all taxes assessed thereafter and hence they would not have to pay *ad valorem* taxes until the 1924 ones were due except on the vacant lot about which a clause was inserted in the contract.

It is elementary that to reform a written contract, the proof showing the mistake or fraud must be clear and convincing. Hayes v. Hudson, 209 Ky. 660, 273 S. W. 524; Bernheim v. Duane, 209 Ky. 754, 273 S. W. 458. Of course this does not mean that there must be no conflict in the evidence, for otherwise relief would be rarely given in cases of this character. The rule is well stated in Irwin v. Westwood Real Estate and Development Co., 200 Ky. 760, 255 S. W. 546, where we said:

"In order, however, to obtain the relief, the proof of the mutual mistake or fraud must be clear and convincing, since its purpose is to overcome the agreement as expressed in the writing. But the 'clear and convincing proof' required before the relief will be given is not confined alone to the express statements of witnesses, but may also be developed by the 'character of the testimony, the coherency of the entire case, the documents, circumstances and facts which are proven.' . . . The ruling requiring 'clear and convincing proof' necessarily does not mean that there should be no contrariety in the proof, for, if it did, the occasions for the application of the remedy would be rare indeed."

See also Rodgers v. Rodgers, 206 Ky. 515, 267 S. W. 1083.

Applying these rules to the case before us, we find on one side three reputable business men testifying that

there was a mistake in the contract as drawn. On the other side is the written contract itself, the testimony of two business men of equal repute that there was no mistake, and the concession of the parties that the pro rating of the licenses and insurance premiums was proper and that these appear in the same clause of the contract as the taxes in question and are coupled with the latter. Under such circumstances, the testimony is in such equipoise that it fails to measure up to the requirement of clear and satisfactory proof necessary to reform a contract as called for by the rule. However, to upset this equipoise and to turn the balance of the scale downward on their side, appellees insist that a paper filed with their amended petition and signed only by M. P. Brothers, O. W. Read, and T. P. Smith, in which it is recited that the W. A. Chambers Company had sold to the Russellville Wholesale Grocery Company its stock of groceries located at Russellville, Kentucky, and this paper was executed by the signers as a contract of indemnity on their part running to the Russellville Wholesale Grocery Company to hold it harmless against any debts or obligations of the seller, taken in connection with the averments in that amended petition, that this contract was executed by appellant to clarify the contract of February 1, 1923, is sufficient for that purpose. These allegations were all traversed by appellant. Waiving the question whether the appellees have identified themselves with the Russellville Wholesale Grocery Company, to which the so-called contract runs, and waiving the further question whether this was an obligation of the appellant, as charged by appellees and denied by appellant, or that only of those who signed it, and passing over the proposition of whether any consideration was given for this so-called contract of February 3, 1923, which proposition was raised by appellant's pleading and was not met by any proof on the part of the appellees, and treating this paper of February 3, 1923, as the obligation of the appellant, we think that from the evidence it is clear that its sole purpose was to hold the appellees harmless only as to those debts which by the original contract the appellant was to pay. Although the paper says that its object is to protect the Russellville Wholesale Grocery Company against "any debt or obligation of the W. A. Chambers Company" it is not pretended by the appellees that by such undertaking they are relieved from paying

the 1923 taxes on the vacant lot.    That was as much an obligation of the appellant at the time it sold the grocery business to appellees as was the obligation for the taxes here in dispute.    If the agreement of February 3rd covers the latter it covers the former, a thing which appellees do not claim.    The same is true as to any licenses or insurance premiums that may have been unpaid as of February 1, 1923.  Appellees conceded their *pro rata* liability for these and do not invoke the paper of February 3rd to escape the same.    It thus is plain that this last dated paper was executed to hold harmless the buyer from any debts it was the duty of the seller to pay under the contract of February 1, 1923, and not as an obligation to pay all the debts and obligations under which the seller then was.    Therefore, we are forced to turn to the first dated contract to see what debts and obligations the seller promised to pay and we see that it provides that the seller was to pay but one-twelfth of the taxes here involved.    The paper of February 3rd in no wise aids us in determining whether or not this clause was inserted by mistake.    If it did so aid it would also establish that the other clauses, by which appellees agreed to pay certain obligations, which appellees concede they must, were also mistakes.    The scale is then not disturbed in its balance by this paper of February 3rd.    When parties have expressed themselves in written memorial of their agreements and understandings the court should be very slow to disregard it unless thoroughly convinced that a mistake has been made in embodying therein that to which the parties have agreed.    We are not in this case, and hence conclude that the lower court erred in reforming the contract here in question.    Appellant by its answer admits its liability for one-twelfth of the 1923 taxes and alleges that prior to the institution of this suit it tendered to appellees that amount.    Appellant further alleges in the answer that it "renews the offer it made appellees and tenders the sum into court."    We find in the record no order showing that the appellant ever paid or tendered any sum into court.    Conceding, without deciding, that such a fact may be established in some way other than by an order of the court, yet, as all of the affirmative matters contained in the pleadings filed were controverted of record by an agreed order, the averment in the answer that appellant tendered into court the sum mentioned, unsupported by proof, does not establish that

fact. In Wright v. Monroe Lumber Co. 156 Ky. 83, 160 S. W. 788, we said:

> "Defendant insists that he is not liable for costs, inasmuch as he made a tender of the amount due prior to the institution of the action. There being no offer of compromise under sections 634 and 635 of the Civil Code, nor offer to confess judgment as provided by section 640 of the Civil Code of Practice, or payment into court of the amount offered, the tender made previous to the filing of the suit was not sufficient to relieve the defendant of the payment of the costs."

In the case before us the answer of appellant which embraced the above alleged tender was filed in the clerk's office and not in open court, and was no offer of compromise made by appellant under sections 634 and 635 of the Civil Code nor any offer on its part to confess judgment as provided by section 640 of that code. Neither was there any payment nor tender into court, so far as this record shows, of the amount appellant says it owes. The offer appellant made in its answer did not even substantially comply with those sections of the code mentioned. It follows therefore that appellant is not relieved of paying the costs of this action in the trial court as it contends that it is. The judgment of the lower court is reversed with directions to enter judgment for appellees for one-twelfth of the taxes in dispute and to dismiss the rest of their petition.

Judgment reversed.